UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| GERALD DAHIR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-292 |
| | § | |
| ROYAL CARIBBEAN CRUISES LTD., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Royal Caribbean Cruises Ltd.'s Opposed Motion to Compel Arbitration. Dkt. 13. Based on the motion, response, and reply; the applicable law; and the arguments of counsel, the motion to compel arbitration is granted. The reasons for the ruling are explained below.

## **Background**

Plaintiff Gerald Dahir ("Dahir") was employed by Defendant Royal Caribbean Cruises Ltd. ("RCCL") with a First Date of Hire in 2009. Dahir is a United States citizen and resident of California. RCCL is a Liberian Corporation with its principal place of business in Miami, Florida. Dahir performed as a band leader and guitar player on the M/V Radiance of the Seas ("Radiance"). The Radiance flies the flag of—and is registered under the law of—the Bahamas.

Dahir and RCCL signed a Sign-On Employment Agreement ("Agreement") with a Sign-On Date of July 1, 2015 and a Projected Sign-Off Date of October 24, 2015. This Agreement contained an Arbitration Clause, which read as follows:

> 1. All grievances and any other dispute whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under the present Agreement, including but not limited to claims for personal injury/disability or death, no matter how described, pleased or styled, and whether asserted against the Owners/Company, Master, employer, Ship Owner, vessel or vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S., ("The Convention"), except as provided by any government mandated contract.
> ….
> 3. Any arbitration shall take place in Miami, Florida, Oslo, Norway, or in any location agreed by the Owners/Company and the Seafarer. The procedural and substantive law of the arbitration shall be the law of Norway without regard to conflict of law principles.
> ….
> 5. Any arbitration, except as provided by any government mandated contract, shall be administered in accordance with the American Arbitration Association—International Center for Dispute Resolution ("ICDR") Rules, as amended with agreement of the parties, with the American Arbitration Association ("AAAA") under its International Dispute Resolution Procedures as the appointing authority.
> ….
> 7. The Owners/Company and the Seafarer shall jointly appoint one arbitrator. In the event there is no agreement, an arbitrator shall be chosen pursuant to the ICDR rules….
> 8. The ICDR Rules of the American Arbitration Association shall govern matters of discovery and procedure not specifically addressed in this Agreement.
> ….
> 10. The arbitration, and not any federal, state or local court or agency shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Employment Agreement including, but not limited to any claim that all o[r] part of this Employment Agreement is void or voidable and as to choice of law.

Dkt. 13-2. Under the Agreement's Governing Law clause, "[a]ny grievance or other dispute shall be governed in accordance with the laws of Norway, without regard to any conflicts of laws principles. *Id*. Below Dahir's signature was a final provision:

"Employee's signature certifies that the employee has read, understood, and agreed to the terms of this agreement." *Id*.

Dahir joined the Radiance in Skagway, Alaska. Dahir alleges that on or about September 13, 2015, his cabin's bunk bed broke, causing him to sustain injuries. The Radiance was in international waters at the time, sailing from Vancouver, British Columbia, to Hilo, Hawaii. Dahir disembarked to seek medical treatment in Sydney, Australia on October 9, 2015. He returned to the ship and fulfilled the remainder of his contractual duty. He disembarked again in Sydney, Australia on October 24, 2015 and was subsequently repatriated to California.

Dahir brought suit in the 122nd Judicial District Court of Galveston County, Texas. Dahir brought claims under general maritime law and the Jones Act sounding in negligence, unseaworthiness, and maintenance and cure. RCCL timely removed the case to this Court, and now seeks to compel arbitration. At issue is whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") controls an arbitration agreement between two United States citizens. *See* 10 June 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *reprinted in* 9 U.S.C. § 201.

## Standard of Review

**A. Under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA") permits a party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *American Bankers Ins. Co. of Florida v. Inman,* 436 F.3d 490, 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24

(1991)); *see also* 9 U.S.C. § 4.  Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement.

When deciding whether parties should be compelled to arbitrate, courts conduct a two-step inquiry.  *OPE International LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 445 (5th Cir. 2001).  First, a court must decide whether the parties agreed to arbitrate their dispute, *i.e.,* "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id*.  Second, if the court determines that the parties agreed to arbitrate, the court considers "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id* at 446.

If a valid agreement is found, and there are no legal constraints external to the agreement that foreclose arbitration, arbitration is mandatory.  *See Volt Information Sciences Inc. v. Bd. Of Trustees of Leland Stanford Junior University,* 109 S. Ct. 1248, 1254-1256 (1989); *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.,* 473 U.S. 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.").  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration …."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460, U.S. 1, 24-25 (1983).

**B. Under the Convention**

Unlike the FAA, the Convention only requires courts to conduct a "very limited inquiry."  *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir.

2004). A court must first decide whether '(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id*. (quoting *Sedco Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985)).[1] A court finding that these requirements are met must order arbitration "unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

## Discussion

RCCL argues that Fifth Circuit precedent—aided by that of the Eleventh Circuit—compels arbitration pursuant to the Convention. Dahir argues the following: (1) that he is a Jones Act seaman who is exempt from being compelled to arbitrate; (2) that the Convention does not control this claim because both parties are United States citizens and there is an insufficient relationship with a foreign state; and (3) that the Convention's 'contrary to public policy' exception allows the Court to decline to compel arbitration.

**A. Jones Act Status**

The Court initially addresses Dahir's argument that his Jones Act seaman status precludes arbitration against his will. Dahir notes that the Jones Act, which adopted Section Five of the Federal Employers' Liability Act ("FELA"), invalidates "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to

---

[1] The Court addresses subsequent Fifth Circuit caselaw clarifying that the fourth requirement is a general one and subject to exception.

enable any common carrier to exempt itself from any liability created by this chapter …." 45 U.S.C. § 55.

Respectfully, this argument is without merit under well-settled Fifth Circuit caselaw. Submitting to arbitration does not constitute a relinquishing of one's rights—instead it merely changes the forum. *See Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 278-87 (5th Cir. 2007) ("Under the arbitration agreement, Terrebonne does not forgo the substantive rights afforded by the Jones Act (and the general maritime law), he only submits to their resolution in an arbitral, rather than a judicial, forum.") (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991)).

**B. The FAA and the Convention**

RCCL argues that the Convention controls in spite of the fourth *Sedco* requirement that neither party is a United States citizen. As discussed, the Court must find the existence of four requirements before ordering arbitration. *See Sedco Inc.*, 767 F.2d at 1144-45. The parties do not contest the first three requirements. Indeed, the record shows that the first three requirements are clearly met. As to the fourth requirement, the Court must decide whether the Convention applies here and—if so—whether it mandates the agreed-upon arbitration.

Title 9 of the United States Code contains both the FAA and the Convention's implementing legislation. *See* 9 U.S.C. §§ 1, 201. The FAA "generally declares valid and enforceable written provisions for arbitration in any maritime transaction …." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339(5th Cir. 2004).

However, Section 1 of the FAA exempts seamen's employment contracts from arbitration. 9 U.S.C. § 1.

In contrast, the Convention provides no such exemption. *See Freudensprung*, 379 F.3d at 341. The Convention also generally recognizes and enforces arbitration agreements. 10 June 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38. However, an agreement "which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship … envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202.[2] The only limitation that the Convention recognizes is that the legal relationship must be considered commercial. 9 U.S.C. § 201.

The Convention operates concurrently to the FAA. When the Convention governs an arbitration agreement's enforcement, the FAA applies only "to the extent that [it] is not in conflict with … the Convention …." 9 U.S.C. § 208.

In a case of first impression, the Fifth Circuit in *Freudensprung* found that the Convention could mandate arbitration between United States citizens when "there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." 379 F.3d at 341. *Freudensprung* involved a maritime action between two United States citizens—an employee and an offshore corporation. *Id*. at 332. There, the parties had entered into a Consultant's

---

[2] Corporations with principal places of business in the United States are considered United States citizens for the purpose of this provision. RCCL's principal place of business is located in Miami, Florida. Therefore, RCCL is considered a United States citizen for the purpose of this provision.

Agreement whereby the parties would resolve any dispute through arbitration. *Id*. The plaintiff employee was injured while working as a leaderman aboard a barge off the coast of Nigeria. *Id*. Reasoning that the Consultant's Agreement "envisage[d] performance … abroad," the Fifth Circuit found that the Convention mandated. *Id*. at 343.

The Eleventh Circuit recently ruled upon a near-identical set of facts to those of the instant claim, holding that "a seaman's work in international waters on a cruise ship that calls on foreign ports constitutes 'performance … abroad'" under the Convention. *Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204-05 (11th Cir. 2016) ("Albert's contract envisaged performance abroad because he worked on a cruise ship that traveled in international waters to foreign ports. Because his contract envisaged performance abroad, the arbitration clause is enforceable under the Convention."). The Eleventh Circuit's definition of "abroad—in or traveling to or from a foreign state" allowed the court to reconcile the Convention's 'performance abroad' clause with its subsequent 'reasonable relation with one or more foreign states' clause. *Id*; see also 9 U.S.C. § 202. *Alberts* thus provides persuasive authority for the proposition that the term 'abroad' as applied to the Convention encompasses international waters as well as foreign states. *See Alberts*, 834 F.3d at 1204-05.

Here, Dahir signed an employment contract for services he performed upon a ship traveling through international waters to ports at foreign states. He was injured after departing from a foreign state and while traveling through international waters to an ultimate destination at a different foreign state. Aside from his public policy concerns, Dahir provides no argument for why the Eleventh Circuit's reasoning in *Alberts* should

not be adopted here. The Court finds that the parties envisaged performance abroad. This performance abroad provided "a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *See Freudensprung*, 379 F.3d at 341. The Convention therefore compels requiring arbitration here.

**C. Public Policy**

Finally, Dahir argues that even if the Convention controls, compelling arbitration is contrary to public policy. *See* Convention, Article II(3) ("The court … shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."); Article V(2)(b) ("Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that … the recognition or enforcement of the award would be contrary to the public policy of that country.").

There is an "emphatic public policy favor[ing] arbitral dispute resolution.[3] *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir. 2015). Accordingly, Dahir has the burden to show a contrary and compelling public interest. *Terrebonne*, 477 F.3d at 285 (citing *Gilmer v.*

---

[3] See also Enesco Offshore Co. v. Titan Marine L.L.C., 370 F. Supp. 2d 593, 597 (S.D. Tex. 2005) ("To say that it is the public policy of the United States and the Fifth Circuit to enforce contractually agreed-upon arbitration provisions would be an understatement. It is hard to imagine a topic in recent years in which the Fifth Circuit has written more frequently and more consistently. Its statements are clear and concise. If there is an agreement in writing to arbitrate, it is the public policy of the federal courts to enforce that provision.").

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). This policy "applies with special force in the field of international commerce." *Asignacion*, 783 F.3d at 1015 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). The Fifth Circuit has held that the Convention's "public policy defense is to be construed narrowly to be applied only where enforcement would violate the forum state's most basic notions of morality and justice.'" *Id*. at 1016.

According to Dahir, there is a strong public policy in protecting seamen as codified in the Jones Act. Also according to Dahir, *Alberts* "lost sight of the purpose of the Convention Act [and that t]here is no purpose in enforcing a treaty unless some foreign nation has a significant interest in the matter.[4] Dkt. 14, p. 13. Here, Dahir has not met his burden to show that arbitration is contrary to public policy. The Court therefore finds that application of the Convention to the parties' arbitration agreement is mandatory under the circumstances.

---

[4] Dahir here ignores the fact that, while RCCL has its principal place of business in the United States, it is a Liberian corporation whose vessel at issue flies the flag of the Bahamas.

## Conclusion

For the reasons explained above, RCCL's motion to compel arbitration is hereby **GRANTED**.

It is hereby **ORDERED** that this case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending arbitration proceedings. The parties may file a motion to lift the stay within **ten days** of the completion of arbitration.

It is further **ORDERED** that all pending motions are hereby **DENIED as moot**.

SIGNED at Galveston, Texas, this 2nd day of August, 2017.

                                          George C. Hanks Jr.
                                          United States District Judge